---

CHARLIZE CUNNINGHAM,                Civil No. 18-11266 (NLH/JS)

        Plaintiff,                **OPINION**

    v.

BURLINGTON COAT FACTORY
WAREHOUSE CORPORATION,

        Defendant.

---

**APPEARANCES:**

DAVID M. KOLLER
KOLLER LAW LLC
2043 LOCUST STREET, STE. 1B
PHILADELPHIA, PA 19103

    *On behalf of Plaintiff Charlize Cunningham*

MICHAEL O'MARA
ADAM D. BROWN
CHELSEA A. BIEMILLER
STRADLEY RONON STEVENS & YOUNG, LLP
457 HADDONFIELD ROAD, STE. 100
CHERRY HILL, NJ 08002

    *On behalf of Defendant Burlington Coat Factory Warehouse*
    *Corporation*

**HILLMAN, District Judge**

This case concerns claims under Title VII of the Civil Rights Act of 1964 ("Title VII") 42 U.S.C. § 2000e, et seq., and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., as amended, for alleged discrimination against Plaintiff based on her transgender status and a disability.

Currently before this Court is Defendant's Motion to Dismiss the Amended Complaint. For the reasons that follow, the Court will grant in part, and deny in part without prejudice, Defendant's motion, and grant Plaintiff leave to amend her Amended Complaint as to her allegations of disability. The Court will also issue an order to show cause as to why Plaintiff's Title VII claim based on her transgender status should not be stayed until the Supreme Court decides the case of R.G. and G.R. Harris Funeral Home v. EEOC, 884 F.3d 560, 575 (6th Cir. 2018), cert. granted, in part sub nom., R.G. & G.R. Harris Funeral Homes, Inc. v. EEOC, 139 S. Ct. 1599 (2019).

## BACKGROUND

This Court takes its facts from Plaintiff's Amended Complaint. Plaintiff, Charlize Cunningham, was hired as a sales associate for Defendant, Burlington Coat Factory Warehouse Corporation, in July 2011. Plaintiff is transgender.[1] Plaintiff alleges she has also been diagnosed with a serious disability, of which Plaintiff claims Defendant was aware. As a result of

_____

[1] Neither the Complaint nor the parties in their submissions define "transgender." The Court understands it to mean a person born of one sex, who later identifies as the other sex, and may be in the process of transitioning between the two. Cf., Merriam-Webster Dictionary, On-Line Edition, https://www.merriam-webster.com/dictionary/transgender (last visited September 30, 2019) ("of, relating to, or being a person whose gender identity differs from the sex the person had or was identified as having at birth).

her disability, Plaintiff claims she is substantially limited in one or more major life activities, including the functioning of her autoimmune system. Plaintiff has refrained from publicly identifying her disability in these proceedings deeming it private and confidential.[2]

Plaintiff claims she was qualified for her position at Defendant and performed well. Shortly after Plaintiff was hired, however, Plaintiff claims she was subjected to disparaging comments and jokes about her transgender status. These comments came from coworkers and supervisors, including Ahmed Savage, who appears to be a manager; Megan Williams, a supervisor; and Charles Boyer, a purchase order manager. For example, Plaintiff claims that Boyer commented to Savage and Williams, loudly enough for Plaintiff to hear, the following: "Is [Plaintiff] transgender . . . he's a pretty one!" After the comment, Plaintiff claims that Boyer, Savage, and Williams all laughed.

Plaintiff also claims that coworkers questioned Plaintiff on whether she was "born a man"; informed Plaintiff about ongoing rumors that she was a man; and used the wrong pronouns when referring to Plaintiff (snickering while doing so). Plaintiff also alleges coworkers and supervisors intentionally

---

[2] Plaintiff has indicated she will submit a filing under seal that identifies her disability if necessary.

excluded her, such as when Savage hosted a potluck dinner for employees and intentionally did not invite Plaintiff.

Plaintiff claims that Savage also made numerous comments about Plaintiff's clothing, and treated her harshly or unfairly depending on the clothing she wore.  On the days that Plaintiff wore a dress or skirt, Plaintiff claims that Savage would scrutinize her work and be overly critical of her performance.  According to Plaintiff, he also unfairly disciplined Plaintiff when she wore dresses.  For example, in August 2012 on a day Plaintiff wore a dress to work, Savage reprimanded Plaintiff for leaning on another employee's desk.  Allegedly, Savage did not scrutinize or overly criticize the performance of non-transgender employees, and Savage did not discipline them for leaning on other employees' desks.

Plaintiff claims that Savage repeatedly counseled Plaintiff that she should not wear a dress or skirt to work, and that Savage did not counsel non-transgender employees not to wear a dress or skirt to work.  On one occasion, Plaintiff claims that she was so distressed after Savage pulled her aside and sternly demanded that she not wear a dress to work that she left early.  Thereafter, Plaintiff complained to Judith Macio, a human resources partner, on at least three occasions regarding the harassment and discrimination she received, but human resources failed to stop or prevent further harassment and discrimination.

Allegedly, it continued throughout the remainder of Plaintiff's employment.

Throughout her employment, Plaintiff applied for more senior positions, including an assistant buyer position and buyer position. On several occasions, after Plaintiff applied for a promotion, Plaintiff claims that Defendant issued her unfair discipline, thereby removing her from consideration for the position. According to Plaintiff, other non-transgender employees were not issued unfair discipline and they were not prevented from pursuing promotional opportunities. As a result, less qualified, non-transgender employees were awarded the promotional opportunities instead of her.

Plaintiff was promoted to the position of Purchase Order Coordinator, a position that paid less than the other positions to which she had applied. Plaintiff was unsuccessful in her pursuit of other promotional opportunities. Defendant's refusal to consider Plaintiff for these promotional opportunities were part of its allegedly ongoing pattern of harassment.

In April 2013, Plaintiff was involved in a car accident from which she developed a serious infection in her lymph nodes. Due to her underlying disability, the infection did not heal and Plaintiff became seriously ill. Plaintiff informed Defendant that her infection would cause her to miss time from work. Plaintiff claims that Defendant did not advise Plaintiff of her

rights under the FMLA to take intermittent leave, offer disability-related intermittent leave, or excuse her time missed as a reasonable accommodation.

By April 2013, Plaintiff had worked 1250 hours in the prior twelve-month period and was eligible for FMLA leave. In September 2013, Plaintiff informed Brandy Cornish and Susan Katims from human resources of her underlying disability and of her need to attend ongoing medical appointments to treat her lymph node infection. Plaintiff claims that during this meeting, Katims stated that if Plaintiff had additional medical problems, they would need to reevaluate Plaintiff's employment.

After the meeting, Plaintiff applied for FMLA, which was initially approved by MetLife. Thereafter, MetLife notified Plaintiff that it had to revoke its approval because Defendant claimed she had not worked sufficient hours. Plaintiff still needed to attend medical appointments and requested - as an accommodation - that her disability-related absences and tardiness be excused. Defendant refused.

According to Plaintiff, Defendant did not provide, and failed to engage in an interactive process to provide, Plaintiff with a reasonable accommodation. Defendant thereafter terminated Plaintiff's employment for absenteeism and tardiness. Plaintiff explained the reason for her absences and tardiness was related to her disability, but Defendant refused to

reconsider the termination.  Plaintiff filed a complaint with the EEOC and received a right to sue letter on March 30, 2018.

Plaintiff initially filed her complaint on June 29, 2018. Plaintiff's Amended Complaint, filed on December 3, 2018, alleges two counts.  Count I alleges sex discrimination.  Count II alleges a violation of the ADA and contains the following claims: (1) actual, perceived, or record of disability discrimination; (2) retaliation; and (3) failure to accommodate. Defendant have moved to dismiss Plaintiff's Amended Complaint, and Plaintiff has opposed Defendant's motion.

## ANALYSIS

### A.    Subject Matter Jurisdiction

This Court has subject matter jurisdiction over the case pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4).  The matter before this Court is a federal question over which this Court has original jurisdiction.  28 U.S.C. § 1331.  In addition, this Court has original jurisdiction over claims "to recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights."  28 U.S.C. § 1343(a)(4).

### B.    Motion to Dismiss Standard

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court

must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005). It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted) (first citing Conley v. Gibson, 355 U.S. 41, 47 (1957); Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994); and then citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

> To determine the sufficiency of a complaint, a court must take three steps. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (alterations in original) (citations omitted) (quoting Ashcroft v. Iqbal, 556

U.S. 662, 664, 675, 679 (2009)).  A court may "generally
consider only the allegations contained in the complaint,
exhibits attached to the complaint and matters of public
record."  Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014)
(citing Pension Benefit Guar. Corp. v. White Consol. Indus.,
Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

A district court, in weighing a motion to dismiss, asks
"not whether a plaintiff will ultimately prevail but whether the
claimant is entitled to offer evidence to support the claim."
Twombly, 550 U.S. at 563 n.8 (quoting Scheuer v. Rhoades, 416
U.S. 232, 236 (1974)); see also Iqbal, 556 U.S. at 684 ("Our
decision in Twombly expounded the pleading standard for 'all
civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d
203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail in
the coffin for the 'no set of facts' standard that applied to
federal complaints before Twombly.").  "A motion to dismiss
should be granted if the plaintiff is unable to plead 'enough
facts to state a claim to relief that is plausible on its
face.'"  Malleus, 641 F.3d at 563 (quoting Twombly, 550 U.S. at
570).

### C. Whether the Court May Consider Facts Outside the Amended Complaint Referenced in Defendant's Motion to Dismiss

Defendant attaches Plaintiff's Equal Employment Opportunity
Commission ("EEOC") Notice of Discrimination and Charge of

Discrimination to its response ("EEOC Notice" and "EEOC Charge," respectively). (Def.'s Mot. to Dismiss, Ex. A.) These were not attached to Plaintiff's Complaint or Amended Complaint. Rule 12(d) provides that a court should treat a Rule 12(b)(6) or 12(c) motion as a motion for summary judgment whenever matters outside the pleadings are considered. However, the Third Circuit has clarified that "[m]erely attaching documents to a Rule 12(c) motion . . . does not convert it to a motion under Rule 56." CitiSteel USA, Inc. v. Gen. Elec. Co., 78 F. App'x. 832, 834-35 (3d Cir. 2003). In ruling on a motion to dismiss, a court has "'discretion to address evidence outside the complaint . . . .'" Id. at 835 (quoting Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 559 (3d Cir. 2002)). Thus, the court "may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Id. (quoting PBGC v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993)).

The Court will exercise its discretion to address evidence outside the complaint.[3] Plaintiff is required to exhaust administrative remedies before pursuing her claims in this

---

[3] The Court declines to exercise its discretion to convert Defendant's Motion to Dismiss into a motion for summary judgment. A motion for summary judgment is not yet ripe at this early procedural stage of the case.

Court, thus Plaintiff's claims are contingent on the EEOC Notice and EEOC Charge. Plaintiff does not dispute the authenticity of these documents. Moreover, they are referenced in the Amended Complaint. (Docket. No. 12, para. 11-18.) Thus, this Court will consider the EEOC Notice and EEOC Charge presented in the Defendant's Motion to Dismiss in the analysis of Plaintiff's Amended Complaint.

### D. Motion to Dismiss

Defendant presents three arguments. First, Defendant argues Count I should be dismissed because transgender individuals are not a protected class under Title VII and therefore one of the elements of the prima facie case cannot be met. Defendant also argues Count I cannot include a sex stereotyping claim because Plaintiff first introduced the claim in her response to Defendant's Motion to Dismiss. Second, Defendant argues Plaintiff is barred from pursuing claims premised on allegations of retaliation or failure to promote because she did not raise them in her administrative charge filed with the EEOC. Third, Defendant argues Count II of Plaintiff's Amended Complaint is insufficient – in its entirety – because Plaintiff failed to adequately state her disability.

The Court will address the second and third arguments first, and then discuss Plaintiff's Title VII transgender discrimination claim.

a. Whether Plaintiff Failed to Exhaust Administrative Remedies on the Claims of Failure to Promote and Retaliation

Defendant argues Plaintiff has failed to exhaust administrative remedies for her failure to promote and retaliation claims and is therefore barred from bringing claims premised on these allegations. Plaintiff concedes that she has failed to exhaust administrative remedies as to her failure to promote claim. (Pl.'s Resp. 13.) To the extent stated, that claim is dismissed. Plaintiff offers no opposition to Defendant's argument that she has failed to exhaust administrative remedies as to her retaliation claim, but the Court will examine Defendant's argument on the merits.

The ADA adopts the Title VII exhaustion scheme. Thus, a party wishing to bring an ADA claim must first file a complaint with the EEOC. Williams v. E. Orange Cmty. Charter Sch., 396 F. App'x 895, 897 (3d Cir. 2010); see also Churchill v. Star Enterprises, 183 F.3d 184, 190 (3d Cir. 1999) ("A party who brings an employment discrimination claim under Title I of the ADA must follow the administrative procedures set forth in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5." (citing Bishop v. Okidata, Inc., 864 F. Supp. 416, 424 (D.N.J. 1994))). Exhaustion of administrative remedies is required to allow the EEOC to investigate discriminatory practices and to properly implement the statutory scheme enacted by Congress.

<u>Williams v. Little Rock Mun. Water Works</u>, 21 F.3d 218, 222 (8th Cir. 1994). Only after the EEOC provides a right-to-sue letter may a plaintiff bring a private action in federal court. <u>Burgh v. Borough Council</u>, 251 F.3d 465, 470 (3d Cir. 2001).

Generally, an ADA action brought in a district court is constrained to the scope of the EEOC charge. <u>Williams</u>, 396 F. App'x at 897; <u>see also</u> <u>Ostapowicz v. Johnson Bronze Co.</u>, 541 F.2d 394, 398 (3d Cir. 1976). In other words, factual allegations must first be brought to the administrative agency before being introduced to the district court. <u>Schanzer v. Rutgers Univ.</u>, 934 F. Supp. 669, 673 (D.N.J. 1996). There is a narrow exception to this scope restriction that allows allegations in the complaint that "squarely fit" in the EEOC charge to proceed even if they were not expressly disclosed in the EEOC charge. <u>See</u> <u>Ostapowicz</u>, 541 F.2d at 398 ("Factual allegations that were not alleged at the agency level may be properly asserted in the district court if they can be reasonably expected 'to grow out of the charge of discrimination.'"). The Court also notes administrative charges should be read liberally, especially when filed without the aid of an attorney. <u>Hicks v. ABT Assocs. Inc.</u>, 572 F.2d 960, 965 (3d Cir. 1978).

Under this exception, additional claims may be added to the complaint if they fall within the scope of the EEOC Charge and

13

if a reasonable investigation by the EEOC would have encompassed the new claims. Howze v. Jones & Laughlin Steel Corp., 750 F.2d 1208, 1212 (3d Cir. 1984) (concluding the addition of a retaliation claim is insufficient reason to deny a motion to amend because it was encompassed within the original discrimination claim). An ADA retaliation claim can fall within the scope of an EEOC charge where disability was checked even if retaliation was not. Fazio v. N.J. Tpk. Auth., No. 11-3789, 2012 WL 71749, at *4 (D.N.J. Jan. 10, 2012) ("[I]t is fair to say that the EEOC would reasonably be expected to investigate whether Defendant retaliated against Plaintiff for taking leave — even if Plaintiff did not specifically mention the word retaliation or check the correct box".).

Here, Plaintiff alleges she exhausted her administrative remedies under the ADA. (Pl.'s Am. Compl. ¶ 12.) Plaintiff timely filed her EEOC Charge, checking the box for both gender and disability discrimination. (Pl.'s Am. Compl. ¶ 13.) Since Plaintiff has checked the box for disability discrimination, the Court finds a retaliation claim premised upon Plaintiff's alleged disability is within the scope of her EEOC charge – just as it was in Fazio. Accordingly, the Court will deny Defendant's Motion to Dismiss on exhaustion grounds.

b. Whether Plaintiff Sufficiently Alleges that She has a
   Disability under the ADA

Defendant moves to dismiss all claims under Count II which includes: (1) actual, perceived, or record of disability discrimination; (2) retaliation; and (3) failure to accommodate.[4] Defendant argues that Count II of Plaintiff's Amended Complaint should be dismissed because she fails to allege a disability as defined by the ADA.

To state a claim for disability discrimination under the ADA, a plaintiff must allege that she (1) is a disabled person within the meaning of the ADA, (2) is otherwise qualified to perform the essential functions of the job, with or without a reasonable accommodation, and (3) has suffered an adverse employment decision as a result of discrimination. Twillie v. Erie Sch. Dist., 575 F. App'x 28, 32 (3d Cir. 2014).

To state an ADA claim for a failure to accommodate, a plaintiff must show: "(1) she is disabled, (2) she is qualified, and (3) her employer (i) refused to provide her with a proposed reasonable accommodation, or (ii) failed to engage in an

_____

[4] Defendant's heading implies that Defendant moves to dismiss only the claim for disability discrimination. (Def.'s Mot. to Dismiss 10.) However, it also seems Defendant moves to dismiss all claims under the ADA. (Def.'s Mot. to Dismiss 15.)  This Court will analyze the sufficiency of the pleading as if Defendant is moving to dismiss all claims under the ADA based on the argument that Plaintiff has not adequately pled a disability.

interactive process after she requested an accommodation, though a reasonable accommodation was possible." <u>Solomon v. Sch. Dist. of Phila.</u>, 882 F. Supp. 2d 766, 779 (E.D. Pa. 2012).

Defendant argues that Plaintiff did not meet the pleading standard necessary for the first element of these claims because she does not provide information about her disability to determine if she is disabled under the ADA. Defendant correctly notes that a simple recitation of the statutory language, absent information about the specific nature of the disability, is insufficient to state a claim under the ADA. <u>Feliciano v. Coca-Cola Refreshments USA, Inc.</u>, 281 F. Supp. 3d 585, 592 (E.D. Pa. 2017).

To establish an ADA retaliation claim, a plaintiff must only show there was: "(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." <u>Fogleman v. Mercy Hosp., Inc.</u>, 283 F.3d 561, 567–68 (3d Cir. 2002).[5]  A plaintiff need not establish they have a disability to bring a retaliation claim under the

---

[5] This Court notes there are two theories of retaliation, "pretext" and "mixed-motives." <u>Shellenberger v. Summit Bancorp, Inc.</u>, 318 F.3d 183, 187 (3d Cir. 2003).  As Plaintiff only advances a pretextual retaliation allegation, this Court will limit the analysis to that theory.  (Pl.'s Am. Compl. ¶ 99.)

ADA.  Krouse v. Am. Sterilizer Co., 126 F.3d 494, 498 (3d Cir.

1997) ("We hold that a person's status as a 'qualified

individual with a disability' is not relevant in assessing the

person's claim for retaliation under the ADA.").  Thus,

Defendant's argument concerning the adequacy of Plaintiff's

pleading of her disability is inapplicable to the retaliation

claim.  As a result, the Court will deny Defendant's Motion to

Dismiss on those grounds.

    The Court must therefore only determine whether Plaintiff

has adequately pled a disability as to her discrimination and

failure to accommodate claims.  The analysis is identical.  An

individual is disabled under the ADA if they have "[a] physical

or mental impairment that substantially limits one or more of

the major life activities of such individual."  29 C.F.R. §

1630.2.  A plaintiff can show they are substantially limited by

describing "(i) [t]he nature and severity of the impairment;

(ii) [t]he duration or expected duration of the impairment; and

(iii) [t]he permanent or long term impact, or the expected

permanent or long term impact of or resulting from the

impairment."  Taylor v. Phoenixville Sch. Dist., 184 F.3d 296,

307 (3d Cir. 1999) (citing 29 C.F.R. § 1630.2(j)(2)).

    Here, Plaintiff alleges she suffers from a disability that

affects her autoimmune function, and because of that disability,

was not able to recover from a lymph node infection.  (Pl.'s Am.

Compl. ¶¶ 21, 49.)  Due to the confidential nature of the
disability, Plaintiff has refrained from providing specific
information about her disability.  However, Plaintiff contends
that at all relevant times, Defendant knew about the disability
and knew the absences and missed time from work were directly
related to her disability.  (Pl.'s Am. Compl. ¶ 52.)

Plaintiff, however, does not indicate what the disability
may be and therefore does not give sufficient information to
state a claim.  Plaintiff solely restates that a major life
function is affected and as a result she was not able to recover
from an infection.  Plaintiff has not disclosed what the
disability is or how it substantially limits her autoimmune
system or her ability to work.  Even taking the allegations as
true, this Court still cannot determine if there are facts to
find relief that is plausible on its face.  Twombly, 550 U.S. at
570.  This Court finds that Plaintiff did not adequately state a
claim for disability discrimination or failure to accommodate
and will grant Defendant's Motion to Dismiss, without prejudice,
on these grounds.

Plaintiff has requested leave to amend her Amended
Complaint.  (Pl.'s Resp. 12.)  Defendant argues leave to amend
should not be given.  Both parties have represented an
understanding that Plaintiff's disability may be considered
sensitive information which may not be appropriate to publicly

disclose on this Court's docket.  Defendant contends that
Plaintiff was on notice that her original complaint was
insufficient and offering to provide information under seal -
now, as opposed to in her Amended Complaint - does not
ameliorate this issue.  Plaintiff argues that she adequately
alleged a claim and therefore does not need to provide more
information at this point.

Medical information that may contain facts of a personal
nature is within the scope of materials that may be entitled to
privacy protection.  United States v. Westinghouse Elec. Corp.,
638 F.2d 570, 577 (3d Cir. 1980).  Rule 15(a) provides that
"leave [to amend] shall be freely granted when justice so
requires." Fed. R. Civ. P. 15(a); Aruanno v. New Jersey, No. 06-
0296 WJM, 2009 WL 114556, at *1 (D.N.J. Jan. 15, 2009).  A
district court reserves the right to deny leave to amend if
there has been undue delay, undue prejudice, bad faith, dilatory
motive, repeated failure to cure deficiencies through previous
amendments, or if the amendment would be futile.  Foman v.
Davis, 371 U.S. 178, 182 (1962).  Ultimately the most important
factor is if the defendant will be prejudiced if the amendment
is allowed; undue delay alone is insufficient.  Howze, 750 F.2d
at 1212.

Here, Defendant argues that Plaintiff could have amended
her complaint and therefore has failed to cure the deficiency in

the Amended Complaint.  Moreover, the Court notes that a lack of
familiarity with the Federal and Local Rules of Civil Procedure
which govern the sealing of docket items is not a sufficient
reason to support amendment.  While both these statements are
true, Rule 15 provides that leave to amend should be freely
granted as justice so requires.  Defendant has shown no reason
why amendment would be prejudicial, especially considering
Plaintiff's allegation that Defendant is on notice of
Plaintiff's condition.  This Court will therefore grant
Plaintiff leave to file a Second Amended Complaint, solely to
amend her Amended Complaint to adequately plead the specifics of
her disability.  Plaintiff may file this complaint under
temporary seal and should file a motion, pursuant to Local Rule
of Civil Procedure 5.3, advising the Court of whether permanent
sealing is appropriate.

c. Whether Plaintiff's discrimination claim under Title
VII based on her transgender status is actionable

Lastly, the Court addresses Plaintiff's claim that Title
VII covers discrimination based on transgender status and also
allows for transgender individuals to bring a Title VII claim
based on sex stereotyping.  The issue is a contentious one, the
subject of a split of authority in the Circuit Courts of Appeal,
and now before the U.S. Supreme Court on a writ of certiorari to
the Sixth Circuit which promise to address both issues.

Defendant argues Plaintiff fails to state a claim of sex discrimination under Title VII because, as a matter of law, a transgender individual is not a part of a protected class. Because the Third Circuit has not spoken on this issue, Defendant argues this Court should follow the lead of the Seventh, Eighth, and Tenth Circuit and hold that transgender individuals are not a protected class under Title VII. These circuits have held - under Title VII - that discrimination against an individual because he or she is transgender is not discrimination because of sex. Etsitty v. Utah Transit Auth., 502 F.3d 1215, 1221 (10th Cir. 2007); Ulane v. E. Airlines Inc., 742 F.2d 1081, 1087 (7th Cir. 1984) ("[D]iscrimination against a transsexual because she is a transsexual is 'not discrimination because of sex.'"); Sommers v. Budget Mktg., Inc., 667 F.2d 748, 750 (8th Cir. 1982) ("[W]e are constrained to hold that Title VII does not protect transsexuals.").

Plaintiff points to the recent conduct of the EEOC and argues discrimination based on an individual's status as transgender is a violation of Title VII. See, e.g., EEOC v. Rent-A-Ctr. E., Inc., 264 F. Supp. 3d 952, 956 (C.D. Ill. 2017) (holding that Title VII protects transgender employees against discrimination because discrimination against a person's transgender status is encompassed within the definition of sex discrimination). Moreover, Plaintiff highlights that the EEOC

has held that transgender discrimination claims are cognizable under Title VII. Macy v. Holder, No. 0120120821, 2012 WL 1435995, at *6 (E.E.O.C. Apr. 20, 2012). More specifically, the EEOC has held transgender discrimination is sex discrimination under Title VII and that Title VII prohibits discrimination on the basis of gender stereotyping. Id.

Plaintiff also urges the Court to adopt the reasoning and holdings of the Sixth and Eleventh Circuits indicating transgender individuals belong to a protected class under Title VII. EEOC v. R.G. &. G.R. Harris Funeral Homes, Inc., 884 F.3d 560, 577 (6th Cir. 2018), cert. granted, in part sub nom., R.G. & G.R. Harris Funeral Homes, Inc. v. EEOC, 139 S. Ct. 1599 (2019) ("Title VII protects transgender persons because of their transgender or transitioning status, because transgender or transitioning status constitutes an inherently gender non-conforming trait."); cf. Glenn v. Brumby, 663 F.3d 1312, 1317-20 (11th Cir. 2011) ("[D]iscrimination against a transgender individual because of her gender-nonconformity is sex discrimination, whether it's described as being on the basis of sex or gender.").

As noted, the Sixth Circuit case is currently before the Supreme Court. The issues before the high court include not only whether transgender individuals belong to a protected class under Title VII but also whether transgender individuals may

bring sex stereotyping claims pursuant Price Waterhouse v. Hopkins, 490 U.S. 228, 251 (1989) (holding that a plaintiff may bring a Title VII claim if a defendant relied on gender when making an adverse employment decision).

Therefore, the parties will be directed to show cause as to why the decision on Defendant's claim that Title VII does not protect transgender individuals should not be stayed until the Supreme Court decides, presumably this term, the case of R.G. and G.R. Harris Funeral Home v. EEOC, 884 F.3d 560, 575 (6th Cir. 2018), cert. granted, in part sub nom., R.G. & G.R. Harris Funeral Homes, Inc. v. EEOC, 139 S. Ct. 1599 (2019).

## CONCLUSION

As discussed herein, the Court will grant, in part, and deny, in part, without prejudice pending a response to the Court's Order to Show Cause, Defendant's Motion to Dismiss. The Court will also grant Plaintiff leave to amend her Amended Complaint in a manner consistent with this Opinion.

An appropriate Order will be entered.


Date:  September 30, 2019          s/ Noel L. Hillman
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.