**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

CHARLIZE CUNNINGHAM,                    1:18-cv-11266-NLH-MJS

               Plaintiff,         **OPINION**

    v.

BURLINGTON COAT FACTORY
WAREHOUSE CORPORATION

            Defendant.

---

Appearances:

JORDAN DANIEL SANTO
DAVID MIKEL KOLLER
KOLLER LAW PC
2043 LOCUST ST., SUITE 1B
PHILADELPHIA, PA. 19103

    *On behalf of Plaintiff*

CHELSEA ANNE BIEMILLER
STRADLEY RONON STEVENS & YOUNG, LLP
2005 MARKET ST., SUITE 2600
PHILADELPHIA, PA. 19103

MICHAEL D. O'MARA
STRADLEY, RONON, STEVENS & YOUNG, ESQS.
457 HADDONFIELD RD., SUITE 100
CHERRY HILL, N.J. 08002

    *On behalf of Defendant*

<u>**HILLMAN**</u>, District Judge

    Pending before the Court are Defendant Burlington Coat

Factory Warehouse Corporation's ("Defendant") motion for summary

judgment, (ECF 94), and the parties' joint motion to seal, (ECF 109).  For the reasons expressed below, Defendant's motion for summary judgment will be granted in part and denied in part and the parties' motion to seal will be denied.

## I. Background

Plaintiff Charlize Cunningham ("Plaintiff") was hired as a retail sales associate for Defendant in July 2011 and was promoted to purchase order coordinator effective April 2, 2012. (ECF 95-2; ECF 95-38 at ¶ 1; ECF 107-2 at ¶ 1).  Plaintiff reported to several direct supervisors during her tenure, including Ahmed Savage, Megan Williams, and Tamara Alston, who in turn reported to Charles Boyter.  (Boyter Dep. Tr. at 13:11-20; ECF 95-5).  Plaintiff is transgender.  (ECF 29 at ¶ 20).

Purchase order coordinators were required to complete a minimum number of order entries – referred to internally as line counts – sixty per day or 300 per week.  (ECF 95-4; ECF 95-38 at ¶ 5).  After being unable to meet minimum requirements, Plaintiff was placed on a performance improvement plan in August 2012 and thereafter sometimes met and sometime did not meet department requirements during various weeks as noted during follow-ups.  (Id.).  Plaintiff's performance improvement plan also listed attention to detail; time management and organization; and limiting personal phone calls, emails, and internet use to break times as areas to address.  (Id.)

Additional performance issues included portions of the workday spent sending memes, jokes, and photos of herself to coworkers and applying for outside employment, (ECF 95-14), and an instance in which she sent a confidential contract to a competitor of the intended vendor, (ECF 95-13).  Boyter testified that Plaintiff was "easily distracted" and that he observed her walking around, socializing, and engaging in activities unrelated to work.  (Boyter Dep. Tr. at 21:20 to 22:24).

During her time working for Defendant, Plaintiff also worked as a nurse's aide at Philadelphia Nursing Home from 11 p.m. to 7 a.m. on various days.  (Cunningham Dep. Tr. at 129:6-24).  Plaintiff would drive directly to Defendant from her job at Philadelphia Nursing Home and slept between jobs and during breaks.  (Id. at 133:19 to 135:10).

Plaintiff was late for work on numerous occasions during her employment with Defendant, including ninety-seven times between April 2012 and February 2013; twelve times (with an absence and three early departures) between May 6, 2013 and June 11, 2013; and fourteen times (with five absences) between the weeks ending June 15, 2013 and August 3, 2013.  (ECF 95-7; ECF 95-8).  Plaintiff was issued a final warning regarding attendance and tardiness issues on August 30, 2013, (ECF 95-11), and was subsequently late eight times with three absences

3

between September 4, 2013 and October 4, 2013, (ECF 95-12).

On April 24, 2012, Plaintiff emailed Judith Mascio, then Defendant's director of human resources, to report an incident in which a fellow purchase order coordinator asked her whether she had been born a man and told Plaintiff that she had been told by Williams – a team lead, which is a supervisory position – that "there was a transvestite in the department, which worked in the back office," which is where Plaintiff worked. (Boyter Dep Tr. 12:7-19; ECF 95-16; ECF 107-2 at ¶ 38). Plaintiff also reported that Williams spread rumors about "'the girl with the red hair' being a man" and that Plaintiff had requested to not be called by her birth name and was "having a sex change." (Id.). Team leads used male pronouns while training her and, while they later corrected themselves, male pronouns were later used by other employees to refer to Plaintiff, she told Mascio. (Id.). In response, one of the team leads explained that male pronouns in question were used to refer to a male employee, not Plaintiff. (ECF 95-18). Plaintiff testified that she was misgendered thirty to forty percent of the time. (Cunningham Dep. Tr. at 184:17 to 185:5).

Plaintiff claims that she was discriminated against due to her gender by Savage, Williams, Boyter, Susan Katims, Brandy Cornish, and others. (Id. at 62:13-18). Plaintiff stated that Savage and Williams counseled and monitored her more frequently

4

and harshly than other employees and that it was her belief that it was due to her gender. (Id. at 62:20 to 66:2).  Savage also instructed her to wear pants while other employees were allowed to wear dresses and skirts, but Plaintiff could not recall if she was disciplined for wearing skirts and did not have documentation of her related complaint. (Id. at 186:1 to 187:24).  Plaintiff also claimed that Savage did not invite her to a potluck, but she may have been invited via email to that or a different potluck. (Id. at 185:6-19, 187:25 to 191:9).

Boyter was short, rude, and unfriendly toward Plaintiff while friendly to other associates, according to Plaintiff, and Plaintiff recalled overhearing Boyter come out of his office and ask Savage whether Plaintiff was transgender to which Savage laughed and Williams replied "[o]h, she's a pretty one." (Id. at 71:22 to 72:7, 183:24 to 184:8).  Plaintiff testified that Katims and Cornish were similarly short and unfriendly with her. (Id. at 74:10 to 75:8).

Plaintiff was diagnosed with a serious disability[1] in March

---

[1] In the Court's September 30, 2019 motion-to-dismiss opinion, Plaintiff was granted leave to file a second amended complaint to plead specifics regarding her disability. (ECF 20 at 20; ECF 21).  Though not expressly identified in the second amended complaint, (ECF 29), an attached certification by counsel identified two disabilities, (ECF 29-1).  Plaintiff thereafter moved to seal the certification. (ECF 30).  Magistrate Judge Matthew J. Skahill granted the motion on October 6, 2022. (ECF 48).  The confidential nature of Plaintiff's disabilities is therefore the law of the case.

2013. (Cunningham Dep. Tr. at 85:4-16; ECF 95-22). Plaintiff disclosed her diagnosis to Katims, vice president of human resources, and Cornish, who also worked in human resources, during a discussion about Plaintiff's final warning in September 2013, but Plaintiff did not request any accommodations related to her treatment. (Cunningham Dep. Tr. at 89:20 to 90:9; Cornish Dep. Tr. at 44:4 to 45:2). Plaintiff testified, but did not report, that Katims responded that Defendant "didn't want sick people working for them" and that any treatment past December 2013 might lead to re-evaluation of her employment. (Cunningham Dep. Tr. at 87:18 to 88:14). This account was refuted by Cornish. (Cornish Dep Tr. at 46:20 to 47:9).

Plaintiff's diagnosis was treated as confidential, (id. at 45:15-25), and Plaintiff did not inform any other employees of her diagnosis, (Cunningham Dep. Tr. at 117:9-14).

In April 2013, Plaintiff was provided personal leave, purportedly to accommodate an unrelated procedure, following denial of family and medical leave of absence ("FMLA") by Defendant's third-party leave administrator, MetLife. (ECF 95-23; ECF 95-24; ECF 95-38 at ¶ 49). Plaintiff was approved for intermittent FMLA for three days per week from September 24, 2013 to December 23, 2013 to accommodate physical therapy following a car accident. (Cornish Dep. Tr. at 39:16 to 40:3; ECF 95-25). Plaintiff's leave was potentially extendable upon

the provision of a new Health Care Provider Certification or updated information, but Plaintiff did not provide such information and her FMLA concluded on December 23, 2013.  (ECF 95-25; ECF 95-28).  Cornish advised Plaintiff that Defendant needed to be updated on which days during the week she would be on leave, medical appointments unrelated to physical therapy were not covered under FMLA, and Plaintiff was still expected to report to work from 9 a.m. to 5:30 p.m. on days she was not on leave.  (ECF 95-26; ECF 95-27).

Plaintiff continued to miss work or report to work late following the conclusion of her FMLA.  Plaintiff was late to work nine times with four absences between January 9, 2014 and February 7, 2014; late for work ten times with three absences between February 10, 2014 and March 3, 2014; and reported late on four days during the week of March 10, 2014.  (ECF 95-31; ECF 95-32).  Plaintiff also did not meet her required line counts. (ECF 95-30; ECF 95-33).  On March 18, 2014, Pamela Collins, human resources business partner for Defendant, terminated Plaintiff's employment, citing performance issues.  (Collins Dep. Tr. at 63:15 to 64:2; ECF 95-5).

Plaintiff filed a notice of charge of discrimination with the Equal Employment Opportunity Commission alleging discrimination under Title VII and the Americans with Disabilities Act ("ADA") on January 15, 2015.  (ECF 95-34).

7

Plaintiff thereafter filed the instant action on June 29, 2018. (ECF 1).  As amended in her second amended complaint, Plaintiff asserts two counts: Count 1 alleges harassment and termination due to her gender and Count 2 alleges failure to offer or consider a reasonable accommodation in lieu of termination, which she alleges was retaliatory.  (ECF 29 at ¶¶ 72-102). Defendant filed the instant motion for summary judgment on October 13, 2023, to which Plaintiff filed an opposition and Defendant replied.  (ECF 94; ECF 107; ECF 108).  On December 26, 2023, the parties jointly filed the pending motion to seal. (ECF 109).

## II. Discussion

### A. Jurisdiction

The Court possesses original jurisdiction over this action as Plaintiff's claims are based on alleged violations of Title VII and the ADA.  See 28 U.S.C. § 1331.

### B. Summary Judgment

The Federal Rules of Civil Procedure dictate that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is genuine when "the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party'" and a fact is "'material' if it 'might affect the outcome of the

8

suit under the governing law.'" Razak v. Uber Techs., Inc., 951
F.3d 137, 144 (3d Cir. 2020) (quoting Anderson v. Liberty Lobby,
Inc., 477 U.S. 242, 248 (1986)).  Facts and evidence are to be
viewed in the light most favorable to the nonmovant.  Id.

## III. Analysis

### A. Count 1 – Title VII

The Court notes at the outset that Plaintiff's opposition
to Defendant's motion for summary judgment as to Count 1
addresses only gender discrimination related to her termination
and hostile work environment.  (ECF 107-1 at 5-10).  The second
amended complaint appears to make additional claims, including a
section dedicated to failure to promote due to gender, (ECF 29
at ¶¶ 28-34), for which Defendant seeks summary judgment due to
Plaintiff's failure to provide factual support, (95-39 at 6
n.2).  The Court interprets Plaintiff's briefing as waiver of
Count 1 claims other than discriminatory termination and hostile
work environment and will grant summary judgment on Plaintiff's
failure-to-promote claim.  See Howard v. Shiftpixy, Inc., No.
20-17631, 2023 WL 2387399, at *7 (D.N.J. Mar. 7, 2023) ("A court
may deem a claim abandoned when a party moves for summary
judgment and the party opposing summary judgment fails to
address the argument in any way."); Carchietta v. Russo, No. 11-
7587, 2017 WL 327306, at *2 (D.N.J. Jan. 23, 2017) (interpreting
the plaintiff's failure to oppose a portion of a summary

judgment motion as abandonment of the relevant count).

### i. Gender Discrimination

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1); Jones v. Se. Pa. Transp. Auth., 796 F.3d 323, 325 (3d Cir. 2015). Title VII discrimination claims proceed under a burden-shifting analysis in which a plaintiff first must establish a prima facie case of discrimination, the burden then shifts to the defendant to "articulate a legitimate, non-discriminatory reason for the adverse employment action," and, if the defendant's burden is met, the analysis shifts once more to the plaintiff to show that the "proffered reason is merely pretext for intentional discrimination." Trapani v. Greatwide Logistics Servs., LLC, 487 F. App'x 21, 23-24 (3d Cir. 2012) (quoting Makky v. Chertoff, 541 F.3d 205, 214 (3d Cir. 2008)).

To make out a prima facie claim of employment discrimination, Plaintiff must "show: 1) membership in a protected class; 2) qualification for the position; 3) an adverse employment action taken against [her] despite being qualified; and (4) 'the action occurred under circumstances that

10

could give rise to an inference of intentional discrimination.'" Morgan v. Fiorentino, 811 F. App'x 798, 803 (3d Cir. 2020) (quoting Makky, 541 F.3d at 214).  "[S]ome causal nexus" must be established between Plaintiff's membership in a protected class and her termination.  Id. at 803-04 (quoting Sarullo v. U.S. Postal Serv., 352 F.3d 789, 798 (3d Cir. 2003)).  It has been recognized within this Circuit – in light of the Supreme Court's decision in Bostock v. Clayton County, 590 U.S. 644 (2020) – that Title VII's protections extend to transgender individuals. See Doe v. Triangle Doughnuts, LLC, 472 F. Supp. 3d 115, 129, 135-36 (E.D. Pa. July 16, 2020).

Defendant focuses its motion brief on the fourth prong of the prima facie analysis – whether the adverse action was made under circumstances inferring discrimination – claiming that Plaintiff has failed to support an inference of discrimination, such as citing similarly situated individuals who were treated more favorably.  (ECF 95-39 at 5-7).  Plaintiff's claims that she was counseled harshly, referred to as "a pretty one," asked about her gender by a coworker, counseled on her attire, excluded from a potluck, and misgendered by unidentified employees are either insufficient to support her claim, not temporally related to her termination, or based on her own subjective beliefs.  (Id. at 8-15).  Even if Plaintiff articulated a prima facie case of discrimination, she was

terminated for a legitimate, well-documented reason – poor performance, according to Defendant, and such reason is not pretextual in light of Plaintiff's undisputed failure to meet line-count requirements and frequent absences and late arrivals. (Id. at 15-20).

In response, Plaintiff asserts that the Court can infer discriminatory animus and points to the unspecified treatment of unidentified "cisgender-presenting coworkers on or about January 28, 2021." (ECF 107-1 at 6-7). Plaintiff may show that Defendant's proffered reason is pretextual by identifying evidence that would allow the factfinder to disbelieve the proffered reason or believe that discrimination was more likely than not a motivating or determinative factor. (Id. at 8).

The Court finds Plaintiff's effort to use similarly situated employees to demonstrate an inference of discrimination to be unavailing. As Defendant notes, Plaintiff's argument concerning how unidentified cisgender coworkers were treated in January 2021 reads as an incomplete thought and is not supported by the record. (ECF 108-1 at 2, 2 n.1). Plaintiff's argument cites to Paragraph 70 of her responsive statement of undisputed material facts, (ECF 107-1 at 7), but that paragraph responds to an asserted fact by Defendant that Plaintiff testified that she believed that she should have been permitted to arrive late or miss work without consequence so long as the late arrivals and

12

absences were related to a medical issue or treatment, (ECF 107-2 at ¶ 70).

Plaintiff makes no effort to identify these employees, their circumstances, how they were treated, or why their treatment nearly seven years following her termination render them similarly situated to her or support an inference of discrimination.  The Court agrees with Defendant that – absent other evidence not identified by Plaintiff – Plaintiff's failure to identify similarly situated employees who were treated more favorably is fatal to Plaintiff's discrimination claim.  See Carter v. Midway Slots and Simulcast, 511 F. App'x 125, 128 (3d Cir. 2013) (finding that the plaintiff failed to demonstrate circumstances giving rise to an inference of race discrimination – and thus failed to establish a prima facie case – due to he and his five identified similarly situated employees not sharing a supervisor and three of them being disciplined for a separate policy than the plaintiff); Newton-Haskoor v. Coface N. Am., No. 11-3931, 2012 WL 1813102, at *5 (D.N.J. May 17, 2012) (concluding, at the dismissal stage, that the conduct of the male employee identified by the plaintiff was too dissimilar and – having taken place nearly two years prior to her termination – too remote in time to find the two to be similarly situated).

Even if the Court were to read in Plaintiff's opposition details and inferences she has failed to articulate, her

discrimination claim would still fall in the burden-shifting framework.  Defendant has identified Plaintiff's poor performance and persistent lateness and absences as legitimate, non-discriminatory reasons for her termination.  (ECF 95-39 at 15-18).  These proffered reasons are supported by portions of the record, including a performance improvement plan that began approximately a year-and-a-half prior to her termination, reports and emails documenting Plaintiff's tardiness and absences, and a final warning issued nearly six months prior to her termination.  (ECF 95-4; ECF 95-7; ECF 95-8; ECF 95-11; ECF 95-12; ECF 95-31; ECF 95-32; ECF 95-33).  The Court finds that Defendant has therefore met its burden.  See Parson v. Vanguard Grp., 702 F. App'x 63, 67-68 (3d Cir. 2017) (finding that poor performance – as documented by year-end reviews, alerts, and a formal warning – constituted a legitimate, non-discriminatory reason for termination); Davis v. Solid Waste Servs., Inc., 625 F. App'x 104, 106 (3d Cir. 2015) (concluding that the defendant met its burden to offer a legitimate reason for the plaintiff's termination based on attendance records showing that the plaintiff was absent twelve times and late more than 130 times in the two years prior to his termination and that his tardiness and absences continued despite warnings).

The analysis need not end here.  The burden shifts back to Plaintiff, however, she does not attempt to shoulder it.  After

a legitimate, non-discriminatory reason is proffered, a
plaintiff may nonetheless establish that the given reason is
pretextual by presenting evidence that either 1) casts doubt on
the proffered reason, enabling the factfinder to conclude that
it was fabricated or 2) "support[s] an inference that
'discrimination was more likely than not a motivating or
determinative cause of the adverse employment action.'" Hanzer
v. Mentor Network, 610 F. App'x 121, 124-25 (3d Cir. 2015)
(quoting Fuentes v. Perskie, 32 F.3d 759, 762 (3d Cir. 1994)).
Plaintiff may have "point[ed] out 'such weaknesses,
implausibilities, inconsistencies, incoherencies, or
contradictions in the employer's proffered legitimate reasons'
that no jury could find them credible." Andersen v. Mack Trucks
Inc., 647 F. App'x 130, 132 (3d Cir. 2016) (quoting Fuentes, 32
F.3d at 765).

     Curiously, despite identifying this precise opportunity in
her opposition brief, (ECF 107-1 at 8), Plaintiff chose not to
seize it, instead moving on to her hostile-work-environment
claim without making any effort to rebut Defendant's identified
reasons for her termination.  Because the Court concludes that
Plaintiff has failed to articulate a prima facie case of
discrimination and – alternatively – has failed to rebut the
legitimate and supported reasons for her termination identified
by Defendant, the Court will grant summary judgment as to

Plaintiff's discriminatory termination claim.

### ii. Hostile Work Environment

Plaintiffs asserting a hostile-work-environment claim have the prima facie burden of demonstrating that "1) the employee suffered intentional discrimination because of his/her sex, 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of _respondeat superior_ liability." Selvato v. SEPTA, 658 F. App'x 52, 55 (3d Cir. 2016) (quoting Mandel v. M & Q Packaging Corp., 706 F.3d 157, 165 (3d Cir. 2013)). The hostility of the work environment is determined by the totality of the circumstances, which "may include 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Fichter v. AMG Res. Corp., 528 F. App'x 225, 230 (3d Cir. 2013) (quoting Harris v. Forklift Sys., 510 U.S. 17, 23 (1993)). At summary judgment, district courts must determine whether a reasonable jury could conclude that the alleged harassment was severe and pervasive. See Selvato, 658 F. App'x at 55.

Defendant emphasizes that Plaintiff cites only a handful of instances in which she was made to feel excluded and those

16

instances are lacking in detail and are insufficient in severity
and frequency to rise to a hostile work environment.  (ECF 95-39
at 22-23).  Plaintiff has offered, at best, subjective beliefs
that she was harassed rather than actions so severe as to alter
the conditions of her employment, according to Defendant.  (Id.
at 23-25).  Plaintiff responds that the "pretty one" incident,
frequent misgendering, and subjection to a stricter dress code
are sufficient to support her hostile-work-environment claim.
(ECF 107-1 at 9-10).

Plaintiff testified that she was misgendered between thirty
and forty percent of the time, a practice that allegedly began
with team leads.  (Cunningham Dep. Tr. at 184:17 to 185:5; ECF
95-16).  She was asked by a coworker if she was born a man.
(Cunningham Dep. Tr. at 184:9-16; ECF 95-16).  Plaintiff
overheard Boyter ask Savage whether Plaintiff was transgender to
which Savage laughed and Williams said "[o]h, she's a pretty
one" and was instructed by Savage to wear pants as opposed to
skirts, while other employees were permitted to wear dresses and
skirts – though she did not recall if she was disciplined.
(Cunningham Dep. Tr. at 183:24 to 184:6, 186:1 to 187:24).

At least some of these allegations are supported by
materials beyond Plaintiff's testimony.  In an April 24, 2012
email to Mascio, Plaintiff reported that she had been asked by a
coworker if she was born a man; was referred to as a

"transvestite"; was subject to rumors that she did not want to be called by her birthname, was having gender-affirming surgery, and "'the girl with the red hair' being a man"; and was mistakenly misgendered by team leads who later corrected themselves, but the inaccuracy had been adopted through the office.  (ECF 95-16).  The coworker who asked Plaintiff about her gender at birth informed Mascio that she asked Plaintiff because she overheard other employees making fun of and laughing at Plaintiff.  (ECF 95-17).

Plaintiff's claims overlap with those pled in Doe, which the Court finds to be the most directly on-point decision within this Circuit.  In Doe, the plaintiff was allegedly harassed by coworkers and customers over the course of two months, including being frequently misgendered; being asked inappropriate questions about her sexuality, gender, and anatomy; and being subject to a stricter dress code – including being required to wear her hair in a ponytail and not wear makeup or nail polish. 472 F. Supp. 3d at 122-23.  The court, at the dismissal stage, concluded that the plaintiff set out a valid hostile-work-environment claim premised on gender stereotyping, finding that her being misgendered, prevented from using the women's restroom, kept away from customers, asked probing questions, and subject to a stricter dress code were sufficiently severe and pervasive, detrimental to her and a reasonable person, and tied

18

to her supervisors to support her claim.  Id. at 129-30.

Plaintiff relies, in part, on Doe in her opposition, (ECF 107-1 at 9), while Defendant contends that the decision is factually distinguishable and unpersuasive as it ruled on a motion to dismiss, (ECF 108-1 at 7 n.2).  Defendant further asserts – as part of its discrimination argument – that Plaintiff provided detailed testimony of alleged discrimination only after being prompted by counsel – which Defendant likens to "sham affidavits," (ECF 95-39 at 10 n.3), and that Plaintiff's allegations and proofs are nonetheless insufficient to rise to the level of severe and pervasive, (ECF 108-1 at 6-8).

The Court reads Defendant's prompting argument as an attack on Plaintiff's credibility, or lack thereof, which would be inappropriate for the Court to consider at summary judgment. See Gofan v. Elmer, No. 16-8559, 2021 WL 1207481, at *10 (D.N.J. Mar. 31, 2021).  Similarly, it is not for the Court to weigh the evidence.  Clews v. Cnty. of Schuylkill, 12 F.4th 353, 358 (3d Cir. 2021).  Rather, the question is whether a reasonable jury could conclude that the persistent misgendering, inappropriate comments, and a distinct dress code – together – were sufficiently severe and pervasive as to detrimentally affect Plaintiff and a reasonable person.  See Selvato, 658 F. App'x at 55.  The Court concludes that a reasonable jury could so find.

The Court further acknowledges, as noted by Defendant, that

19

courts outside of this Circuit have arrived at holdings contrary to the Court when presented with similar facts.  See, e.g., Faulkenberry v. U.S. Dep't of Def., No. 1:22-cv-01150, 2023 WL 3074639, at *11-12 (D. Md. Apr. 25, 2023) (granting dismissal when the plaintiff's allegations included denial of a parking permit and relocation benefits given to other employees, negative comments regarding her attire, and misgendering). However, to the extent that any lower-court decision is persuasive to the Court, though not binding, see Daubert v. NRA Grp., LLC, 861 F.3d 382, 395 (3d Cir. 2017) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same [district] judge in a different case." (alteration in original) (quoting Camreta v. Greene, 563 U.S. 692, 709 n.7 (2011)), the Court takes greatest guidance from the in-Circuit opinion of Doe.

Because the Court finds that a reasonable jury could find that the treatment toward Plaintiff was severe and pervasive enough to detrimentally affect her and a reasonable person, summary judgment will be denied.

**B. Count 2 - ADA**

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring,

advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  To establish a prima facie ADA discrimination claim, a plaintiff must demonstrate that they 1) are disabled within the meaning of the ADA, 2) are otherwise qualified for the position with or without reasonable accommodations, and 3) were subject to an adverse employment decision resulting from discrimination – a prong that requires causation.  Tirk v. Dubrook, Inc., 673 F. App'x 238, 241 (3d Cir. 2016).  Once the plaintiff establishes a prima facie claim by the preponderance of the evidence, the burden shifts to the defendant to identify a legitimate, non-discriminatory reason and – if met — the burden shifts back to the plaintiff to show that that reason is pretextual, similar to a Title VII discrimination analysis.  See id. at 240-41.

Defendant claims that Count 2 must fail on several fronts. First, Defendant claims that Plaintiff was not known to have a disability and did not suffer an adverse employment action due to her disabilities as the only two employees who knew of her diagnosis – Katims and Cornish – were not involved in her termination.  (ECF 95-39 at 27-29, 33-35).  Plaintiff is also not a qualified person under the ADA, according to Defendant, because she could not perform the essential function of regular, timely attendance.  (Id. at 29-33).  Defendant adds that, even

if Plaintiff has established a prima facie ADA claim, her poor performance was a legitimate, non-pretextual reason for her termination.  (Id. at 35-36).

Plaintiff counters that her needed accommodation was medical leave, she informed her supervisor of a medical issue associated with a car accident, and that – had she been accommodated – she would have been able to perform the essential functions of her job.  (ECF 107-1 at 11).  She adds that, because her termination was due to absences, the Court must infer that those absences were connected to medical needs and credibility determinations are to be made by the factfinder at trial.  (Id. at 11-12).

The Court agrees with Defendant that Plaintiff has failed to establish a prima facie discrimination claim.  First, Plaintiff was informed by way of her August 2013 final warning that her absences and lateness negatively impacted her productivity and the productivity of her department and that failure to keep her schedule may have resulted in termination. (ECF 95-11).  Plaintiff was thereafter counseled that her FMLA did not cover all medical treatment and that it was important to notify Defendant of the days she would be out, (ECF 95-26; ECF 95-27), and was advised by Alston of the importance of punctuality and attendance shortly before her termination, (ECF 95-30).  Plaintiff testified that she believed that any absence

or lateness at all related to any medical issue or treatment should have been excused.  (Cunningham Dep. Tr. at 119:5-22). However, this Court has found that "because Plaintiff's history of unexcused absenteeism indicates an inability to attend work on a regular basis when not otherwise excused, the Court cannot find Plaintiff is qualified for the job he occupied."  Marsh v. GGB, LLC, 455 F. Supp. 3d 113, 125 (D.N.J. Apr. 23, 2020) (collecting cases).

Second, Plaintiff has failed to establish or identify a disputed material fact whether her termination was due to her disabilities.  "[B]ecause disabilities are often unknown to an employer, [a plaintiff] 'must demonstrate that the defendant employer knew of the disability to state a prima facie case of unlawful discharge.'"  Giunta v. Accenture, LLP, No. 08-3776, 2011 WL 322634, at *9 (D.N.J. Jan. 31, 2011) (quoting Geraci v. Moody Tottrup, Int'l, 82 F.3d 578, 581 (3d Cir. 1996)); see also Reutzel v. Answer Pro, LLC, No. 17-944, 2019 WL 3557365, at *5 (W.D. Pa. Aug. 5, 2019) (noting that a causal connection between a plaintiff's disability and the adverse employment decision cannot be found when the employer did not know or have reason to know of the disability).

Here, Plaintiff testified that Katims and Cornish were the only two individuals who knew of her diagnosis.  (Cunningham Dep. Tr. at 117:9-14).  To the extent that her claim is premised

on her car accident, Plaintiff was approved for FMLA leave and opted not to attempt to extend her leave nearly three months prior to her termination. (ECF 95-25; ECF 95-28).  Collins testified that the decision to terminate Plaintiff was hers, though she may have consulted with Cornish and Boyter.  (Collins Dep. Tr. at 63:19 to 64:17).

Plaintiff makes a passing reference to Collins potentially conferring with Cornish in her responsive statement of facts, (ECF 107-2 at ¶ 83), but the Court finds any related argument to be a red herring.  The question is whether Collins knew of Plaintiff's diagnosis at the time of her decision.  Collins's unrefuted testimony is that she did not.  (Collins Dep. Tr. at 41:7-10).  To find otherwise would be to permit Plaintiff to meet her obligation at summary judgment through conjecture – which the Court will not do.  See Halsey v. Pfeiffer, 750 F.3d 273, 287 (3d Cir. 2014).

Therefore, the Court concludes that Plaintiff has failed to satisfy an essential element, or identify a related disputed material fact, of a prima facie discrimination case.  Shawley v. Jim Shorkey 1 White Oak, LLC, No. 20-710, 2022 WL 1539957, at *11 (W.D. Pa. May 16, 2022) (granting summary judgment when there was no evidence that the individuals who terminated the plaintiff knew of her disability); Reutzel, 2019 WL 3557365, at *5 (finding a lack of causal connection between employment

decisions and the plaintiff's disability when the relevant decisionmakers did not know of the plaintiff's disability until after the fact).

Finally, even if the Court concluded that Plaintiff has met her prima facie burden, her claim would still fail under the ADA's burden-shifting analysis.  As with the Title VII claim, Defendant cites Plaintiff's poor performance, absences, and tardiness – which predate and postdate her FMLA – as legitimate reasons for her termination, (ECF 95-39 at 35-36).  Such reasons are supported by the record, (ECF 95-4; ECF 95-7; ECF 95-8; ECF 95-11; ECF 95-12; ECF 95-31; ECF 95-32; ECF 95-33), and have been deemed legitimate within this District.  See Pezza v. Middletown Twp. Pub. Schs., No. 18-16354, 2023 WL 8254431, at *10-11 (D.N.J. Nov. 29, 2023); D'Agostino v. Kendall, No. 19-281, 2021 WL 4860095, at *9 (D.N.J. Oct. 19, 2021).

Plaintiff had, as with her Title VII discrimination claim, the opportunity to rebut Defendant's proffered reasons as pretextual.  See Ostrowski v. Con-Way Freight, Inc., 543 F. App'x 128, 130 (3d Cir. 2013) ("Unless the plaintiff can point 'to some evidence, direct or circumstantial, from which a factfinder' could find that the articulated legitimate reasons were pretextual, the defendant is entitled to summary judgment." (quoting Jones v. Sch. Dist. of Phila., 198 F.3d 403, 413 (3d Cir. 1999))).  Plaintiff instead, similar to her Title VII

opposition, identified this opportunity and chose not to point

to any evidence demonstrating pretext, instead focusing on the

importance of credibility and how such questions are to be left

to the factfinder.  (ECF 107-2 at 11-12).  This argument fails

to provide any evidence with which a factfinder could find that

the reasons given by Defendant are pretextual.  Therefore,

summary judgment is appropriate.  See Ostrowski, 543 F. App'x at

130-31.[2]

---

[2] Defendant's motion brief contends that Plaintiff has not
specified how she was allegedly retaliated against.  (ECF 95-39
at 25 n.10).  Though Plaintiff's opposition states that she has
brought an ADA retaliation claim, (ECF 107-1 at 1), she does not
otherwise respond to Defendant's contention and the Court
therefore deems the claim waived, see Howard, 2023 WL 2387399,
at *7.  Likewise, Defendant's reply brief argues that Plaintiff
did not respond to Defendant's motion brief on the issue of
failure to accommodate and has thus waived the claim.  (ECF 108
at 11 n.4).  The Court agrees.  Indeed, Defendant sought summary
judgment to the extent that Plaintiff's ADA claim is premised on
failure to accommodate, (ECF 95-39 at 36-40), and Plaintiff's
relatively brief opposition only references the standard for
disability discrimination and argues that she was terminated
instead of being provided an accommodation, (ECF 107-1 at 11).
For the sake of completeness, "[a] plaintiff bringing an ADA
failure-to-accommodate claim must establish: '(1) he was
disabled and his employer knew it; (2) he requested an
accommodation or assistance; (3) his employer did not make a
good faith effort to assist; and (4) he could have been
reasonably accommodated.'"  Capps v. Mondelez Global, LLC, 847
F.3d 144, 157 (3d Cir. 2017) (quoting Armstrong v. Burdette
Tomlin Mem'l Hosp., 438 F.3d 240, 246 (3d Cir. 2006)).  Here,
Plaintiff did not seek accommodations from Katims or Cornish
when she disclosed her diagnosis.  (Cornish Dep. Tr. at 44:23 to
45:2).  Plaintiff does not dispute that testimony, (ECF 107-2 at
¶¶ 47, 59, 63), or that she ever requested FMLA in connection
with her diagnosis, (id. at ¶ 107).  Therefore, Plaintiff's
claim must fail – at least in part – on the second prong of the
prima facie analysis.  See Arana v. Temple Univ. Health Sys.,

**C. Motion to Seal**

Finally, the Court turns to the parties' joint motion to seal. (ECF 109). Motions to seal are governed by Local Civil Rule 5.3. See Medley v. Atl. Exposition Servs., Inc., 550 F. Supp. 3d 170, 203 (D.N.J. July 26, 2021). Local Civil Rule 5.3 requires that motions to seal be made via a single, consolidated motion on behalf of all parties, L. Civ. R. 5.3(c)(1), and include an index providing with particularity (a) the nature of the materials or proceeding at issue, (b) the private or public interests warranting the relief sought, (c) the clearly defined, serious injury that would result without relief, (d) an explanation as to why less restrictive alternatives are unavailable, (e) any prior orders sealing the same materials, and (f) the identity of any objector, L. Civ. R. 5.3(c)(3).

Courts must make findings on the Local Civil Rule 5.3(c)(3) factors in orders and opinions sealing or otherwise restricting public access to judicial proceedings or related materials. L.

---

776 F. App'x 66, 71 (3d Cir. 2019) ("An employee must say or do something to put her employer on notice that she would like to be accommodated at work."). To the extent that Plaintiff's claim was premised on a condition related to her car accident, Plaintiff was approved for intermittent FMLA to accommodate her physical therapy. (Cornish Dep. Tr. at 39:16 to 40:3; ECF 95-25). Plaintiff had an opportunity to extend her leave with a new Health Care Provider Certification or updated information but declined to do so. (ECF 95-25; ECF 95-28). Plaintiff does not identify a supplemental request for accommodation or assistance.

Civ. R. 5.3(c)(6); Sanofi-Aventis U.S. LLC v. Novo Nordisk Inc., No. 3:16-cv-09466, 2018 WL 10911501, at *1 (D.N.J. June 19, 2018).  There is a presumption in favor of public access to judicial records which may be overcome only upon a showing of "good cause" – that is "a particularized showing that disclosure will cause a 'clearly defined and serious injury.'"  See Medley, 550 F. Supp. 3d at 203-04 (quoting Pansy v. Borough of Stroudsburg, 23 F.3d 772, 786 (3d Cir. 1994)).

Here, the parties seek to seal Defendant's motion brief and all attached exhibits, Plaintiff's opposition and related materials – including a responsive statement of undisputed material facts and certificate of service, and Defendant's reply.  (ECF 109; ECF 109-1 at ¶ 4).  Chelsea A. Biemiller, counsel for Defendant, explains in an attached declaration that these "Summary Judgment Materials" were filed under seal due to their "repeated references throughout to the personal medical information and diagnosis of Plaintiff, which Burlington understands Plaintiff intends to keep private and confidential." (ECF 109-1 at ¶ 4).  Biemiller asserts that Plaintiff's medical information for which she has a legitimate privacy interest is sensitive and confidential, will be publicly disclosed absent the Court granting the pending motion, and cannot be protected by less restrictive means due to the repeated references to her medical information throughout.  (Id. at ¶¶ 6-9).

The parties have also filed an index stating that the materials sought to be sealed contain highly sensitive personal and medical information, Plaintiff's privacy rights would be undermined if unredacted materials were made available on the docket, and any alternative to sealing "would not provide the protections required to prevent such information from public disclosure."  (ECF 109-2).

The Court does not dispute Plaintiff's legitimate privacy interest in her medical information.  As stated above, Judge Skahill has sealed the exhibit attached to Plaintiff's amended complaint containing details of her disabilities, (ECF 48), and thus the confidentiality of that information is the law of the case.  The Court notes, however, that Judge Skahill's order was limited to the attachment to the second amended complaint and it was apparently important to Judge Skahill that Plaintiff consolidated all of the sensitive medical information into a single exhibit, enabling the second amended complaint to be otherwise accessible to the public.  (Id. at 4-5).

These considerations in mind, this Court has denied motions to seal that it has deemed overly broad, see J.A. v. Monroe Twp. Bd. of Educ., Nos. 1:20-cv-09498 & 1:21-cv-06283, 2023 WL 5451032, at *14 (D.N.J. Aug. 24, 2023), and will do so here. Many of the exhibits sought to be sealed by the instant motion to do not make reference to any specific medical condition of

Plaintiff, (ECF 95-2; ECF 95-4; ECF 95-5; ECF 95-7; ECF 95-8; ECF 95-9; ECF 95-10; ECF 95-11; ECF 95-12; ECF 95-13; ECF 95-14; ECF 95-16;  ECF 95-17; ECF 95-18; ECF 95-20; ECF 95-21; ECF 95-30; ECF 95-31; ECF 95-32; ECF 95-35; ECF 95-36), and it is unclear to the Court how Plaintiff's legitimate privacy interest is advanced by their sealing.  These documents are relevant to Plaintiff's claims and Defendant's defenses.  The Court is further unpersuaded that documents referencing Plaintiff's medical information such as briefs and transcripts cannot be redacted in a manner that appropriately balances Plaintiff's privacy with the public's right to access.

Because the Court concludes that the parties' motion seeks sealing beyond what is necessary to protect the identified privacy interest at stake, their motion will be denied.  See Medwell, LLC v. Cigna Corp., No. 20-cv-10627, 2020 WL 7694008, at *4 (D.N.J. Dec. 28, 2020) ("A motion to seal is overbroad where the moving party's interest 'can be adequately served by filing a more narrowly tailored' motion to seal." (quoting Bock v. Pressler & Pressler, LLP, No. 11-07593, 2014 WL 1233039, at *3 (D.N.J. Mar. 25, 2014))).  The parties shall have thirty days to file a renewed motion with copies of the relevant materials, redacted or unredacted to the extent necessary to protect Plaintiff's stated privacy interest.

**IV. Conclusion**

For the reasons stated above, Defendant's motion for summary judgment, (ECF 94), will be granted in part and denied in part and the parties' motion to seal, (ECF 109), will be denied without prejudice.  Plaintiff's lone remaining claim will be Title VII hostile work environment.  The parties shall have thirty days to file a renewed motion to seal.

An order consistent with this opinion will be entered.


Date: February 29, 2024          s/ Noel L. Hillman
At Camden, New Jersey        NOEL L. HILLMAN, U.S.D.J.